# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SERAFIN TORRES and HORTENCIA TORRES, | ) ) ) | |
| Plaintiffs, | ) ) | No. 14 C 2830 |
| v. | ) ) | Judge Jorge L. Alonso |
| ALLSTATE INDEMNITY CO. and ALLSTATE INSURANCE CO., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs sue defendants for breach of contract (Counts I and II), vexatious failure to settle (Count III), common law and statutory fraud (Counts IV-VII), and a declaratory judgment (Count VIII). Defendants have filed a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss the amended complaint. For the reasons set forth below, the Court grants in part and denies in part the motion.

## Facts

Since 2003, plaintiffs have insured their property at 2907 West Belden in Chicago through a policy issued by defendants. (Am. Compl. ¶ 8.) In relevant part, the policy states:

> 4. Our Settlement Options
> In the event of a covered loss, we have the option to:
> a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or
> b) pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5 . . . .
> . . . .
> 5. How We Pay For A Loss
>  . . . [P]ayment for covered loss will be by one or more of the following methods:
> . . . .

b) Actual Cash Value. If you do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. . . .
. . . .
c) Building Structure Reimbursement. . . . [W]e will make additional payment to reimburse you for cost in excess of actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment . . . .

Building Structure Reimbursement will not exceed the smallest of the following amounts:
1) the replacement cost of the part(s) of the building structure(s) for equivalent construction for similar use on the same premises;
2) the amount actually and necessarily spent to repair or replace the damaged building structure(s) with equivalent construction for similar use on the same residence premises; or
3) the limit of liability applicable to the building structure(s) as shown on the Policy Declarations . . . .
. . . .
d) Personal Property Reimbursement. . . . [W]e will make additional payment to reimburse you for cost in excess of actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered property or wall-to-wall carpeting within 180 days of the actual cash value payment.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:
1) the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;
2) the cost of repair or restoration; or
3) the limit of liability shown on the Policy Declarations . . . .

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2) or 3) above.

(Am Compl., Ex. A, Policy at 0033-35) (emphasis omitted).

On September 16, 2012, plaintiffs' garage burned down, damaging plaintiffs' home, cars, and personal property in the process. (Am. Compl. ¶ 11.) Defendants prepared an estimate of the damage to the structures and gave plaintiffs the name of contractor who would make the repairs.

(*Id.* ¶¶ 46-48.) However, neither defendants' contractor nor any contractor contacted by plaintiffs would perform the work for the amount of defendants' estimate. (*Id.* ¶¶ 48-52.)

On July 2, and again on July 20, 2013, plaintiffs invoked their right to seek an appraisal for the structures claim, as set forth in the policy:

> If you and we fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire.
>
> . . . . The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to you and to us the amount agreed upon shall be the amount of loss. If they cannot agree they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of loss.

(*See id.*, Ex. A, Policy at 0058.)

In early September 2013, though defendants had still not identified their appraiser, plaintiffs' appraiser sent his estimates to defendants. (Am. Compl. ¶ 57.)

Sometime thereafter, defendants selected an appraiser. (*Id.* ¶ 64.) Because the two appraisers' estimates differed, the dispute was sent to an umpire. (*Id.* ¶ 68.) The umpire awarded to plaintiffs only the cost of repairing structure damage that was still visible, which was far less than the full amount of damage because plaintiffs had made substantial repairs to their property before the appraisal was conducted. (*Id.*)

At some unidentified time, defendants "issued a payment for what purports to be the actual cash value of the [contents] of Plaintiff's damaged property before the fire," but plaintiffs allege that "the amount paid does not even begin to approach the actual cash value of Plaintiff's property before

3

the loss due to Defendants' making assumptions about the pre-loss condition of the property and application of a generic depreciation schedule to the property." (*Id.* ¶ 73.)

Three months after plaintiffs filed this suit, defendants "sought to invoke the appraisal provision" for the plaintiffs' contents claim. (*Id.* ¶ 82.) Plaintiffs apparently refused to participate in the appraisal process. (*See id.* ¶¶ 82-84.)

**Discussion**

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Defendants argue that the common law and statutory fraud claims in Counts IV-VII should be dismissed because they are simply a restatement of plaintiffs' contract claims. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005) ("A breach of contractual promise, without more, is not actionable under the Consumer Fraud Act."). The Court agrees. The fraudulent misrepresentations plaintiffs attribute to defendants are policy provisions that defendants allegedly breached. (*See* Am. Compl. ¶¶ 99-101 (alleging that the "settlement options" provision of the policy was a misrepresentation); *id.* ¶ 117 (alleging that defendants made misrepresentations [about the "settlement option" policy provision] "set forth in paragraph 99"); *id.* ¶¶ 128-31 (alleging that defendants falsely stated in their policies that payment for destroyed property would be on an actual cash basis or cost-of-contents basis); *id.* ¶ 146 (alleging that defendants made misrepresentations

4

[about the actual cash or cost-of-contents basis of payments] "set forth in paragraphs 128-131"). Because the alleged misrepresentations are defendants' contractual promises, they cannot be the basis for common law or statutory fraud claims. *See Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399-401 (7th Cir. 2011) (affirming summary judgment for insurer on fraud and Consumer Fraud Act claims based on insurer's alleged "false[] promise[s] to restore its insureds' vehicles to their preloss condition and fail[ure] to disclose to policyholders that it would not keep this promise" because there was no evidence that "defendant engaged in deceptive acts or practices distinct from any underlying breach of contract" and the fraud claims were "just . . . reformulation[s] of the contract claim"). As in *Avery* and *Greenberger*, here "the consumer-fraud and contract claims rest on the same factual foundation; no distinct deceptive acts are alleged." *Id.* at 400. Thus, plaintiffs have not stated viable common law or statutory consumer fraud claims.

Defendants contend that the Count I breach of contract claim (for structure damage) and the Count III statutory failure-to-pay claim are foreclosed by plaintiff's decision to use the appraisal process set forth in the policy. (*See* Am. Compl., Ex. A, Policy at 58 ("A written award agreed upon by [the two appraisers or one appraiser and an umpire] *will determine the amount of loss*.") (emphasis added).) Because plaintiffs chose to use the appraisal process, the result of which the contract says is dispositive, defendants argue that plaintiffs are bound by the result.

In *Stratford West Homeowners Association v. Country Mutual Insurance Co.*, 788 N.E.2d 342, 343 (Ill App. Ct. 2003), the Illinois Appellate Court addressed precisely this issue, *i.e.*, whether "an award made pursuant to an appraisal clause: (1) operate[s] as a final and binding resolution of the parties' dispute over the amount of the plaintiff's loss; and (2) foreclose[s] either party from

5

subsequently maintaining an action in a court of law to determine the amount of the loss." The court said:

> The provision in question is essentially an arbitration clause, . . . [subject to] the Uniform Arbitration Act . . . . However, non-binding arbitration exists in Illinois as a means of resolving disputes, and neither the Act nor Illinois case law mandates that all arbitration must be binding. . . .
>
> . . . . Without language requiring binding arbitration, a policy will be construed as an agreement to submit to non-binding arbitration. *DeGroot*, 267 Ill. App. 3d at 725, 205 Ill. Dec. 584, 643 N.E.2d 875. Nothing in the insurance contract indicated that, by participating in the appraisal, Stratford was forfeiting its right to seek redress in court. We decline the opportunity to lower the standard under which parties relinquish their right to sue. A party's waiver of that right must be evident from the agreement.
>
> In this case, the appraisal does not operate as a final and binding resolution of the parties' dispute over the amount of the loss and does not foreclose either party from maintaining an action in a court of law. The plaintiff did not give up his right to file suit, and the trial court properly struck Country Mutual's defenses.

*Id.* at 343-44. As in *Stratford*, the policy in this case does not contain a waiver of the policyholder's right to sue. On the contrary, it expressly contemplates that such suits will be filed, as it sets a limitations period for them. (*See* Am. Compl., Ex. A, Policy at 0058.) Thus, like the plaintiff in *Stratford*, plaintiffs here are not bound by the umpire's decision. *See DeGroot v. Farmers Mut. Hail Ins. Co. of Iowa*, 643 N.E.2d 875, 876 (Ill. App. Ct. 1994) ("Because the policy does not clearly provide that the plaintiff is giving up his right to file suit by seeking an appraisal, we hold that he did not give up that right.").

Defendants' next argument is that the Count II breach of contract claim (for contents damage) is barred by the release contained in the sworn statement of loss plaintiffs signed. The parties dispute whether the Court can consider this document in deciding this motion. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (stating that a court can

consider documents submitted by defendants with a Rule 12(b)(6) motion to dismiss if the documents "are referred to in the plaintiff's complaint and are central to her claim"). The argument is academic, however, as the copy of the document defendants submitted is illegible. If, in the course of discovery, defendants obtain a copy of the document that is readable, they can revisit this issue in a summary judgment motion.

Alternatively, defendants ask the Court to dismiss or stay the proceedings on Count II because a suit with a nearly-identical claim, *Simpson v. Allstate Insurance Co.*, 14 C 1040, is already pending before Judge Zagel. "As a general rule, a federal suit may be dismissed for reasons of wise judicial administration whenever it is duplicative of a parallel action already pending in another federal court." *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (quotation and citations omitted). One suit is duplicative of another if "the claims, parties, and available relief do not significantly differ between the two actions." *Id.* (quotation omitted). Though the claims in the two cases are similar, the parties are not the same, and thus Count II is not a candidate for dismissal as a duplicate of the contract claim in *Simpson*.

Finally, defendants assert that completion of the appraisal process for the contents claim, which plaintiffs admit defendants initiated (*see* Am. Compl. ¶¶ 82-83), is a condition precedent to filing suit on Count II. (*See id.*, Ex. A, Policy at 0058 (stating that "no suit or action may be brought against [defendants] unless there has been full compliance with all the policy terms" and that "[u]pon [an appraisal] demand, each party *must* select a competent and impartial appraiser") (emphasis added).) However, defendants did not invoke the appraisal provision until three months after plaintiff filed this suit. (*See* Notice Removal, Ex. A, Compl. (showing filing date of Feb. 25, 2014); Mem. Law Supp. Defs.' Mot. Dismiss, Ex. 3, Letter from Hanover to Piell (May 19, 2014).)

Because neither party had invoked the appraisal provision for the contents claim before this suit was filed, plaintiffs were in compliance with the policy's terms when they filed suit.

Defendants' next argument is that Count III, the statutory failure-to-settle claim, is barred by the existence of a bona fide coverage dispute. *See* 215 Ill. Comp. Stat. 5/155 (permitting courts to award reasonable attorneys fees to policyholders who prevail in a suit against an insurer if the insurer's denial of or delay in paying a claim is "vexatious and unreasonable"); *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000) ("[A]n insurer's conduct is not vexatious and unreasonable if, among other things "there is a bona fide dispute concerning the scope and application of insurance coverage"); *Cook ex. rel. Cook v. AAA Life Ins. Co.*, 13 N.E.3d 20, 38 (Ill. App. Ct.) (stating that a bona fide dispute is one that is "real, actual, genuine, and not feigned") (quotation omitted), *appeal denied*, 20 N.E.3d 1252 (2014). The appellate court has said that "'bad faith' [is] the semantic equivalent of 'vexatious and unreasonable'" and includes such conduct as:

> [T]he insurer's refusal to pay despite knowledge that it was liable and knowledge that refusal would result in serious damage to the insured[;]. . . . failure to adequately investigate a claim or denial of the claim without adequate supporting evidence; failure to evaluate a claim objectively; interpreting policy provisions in an unreasonable manner; unreasonably low settlement offers; reliance on misrepresentations in the insurance application which are very minor, or where the insurer's agent knowingly filled out the application falsely; and abusive or coercive practices designed to compel compromise of a claim.

*Emerson v. Am. Bankers Ins. Co. of Fla.*, 585 N.E.2d 1315, 1320-21 (Ill. App. Ct. 1992) (quotation omitted). Plaintiff alleges that defendants denied their claims without adequate supporting evidence, failed to evaluate their claim objectively, interpreted policy provisions unreasonably, and made unreasonably low settlement offers. Accordingly, they have stated a claim under section 155.

8

The Court agrees with defendants, however, that the Count VIII claim for a declaratory judgment is redundant of plaintiffs' other claims. The declarations plaintiffs seek, that defendants' practices "violate the terms of the . . . insurance policies and . . . Illinois law" and that defendants "failed to comply with the terms of [the] insurance policies and Illinois law" (Am. Compl. ¶ 158), are precisely the findings that must be made for plaintiffs to prevail on the contract and failure-to-settle claims in Counts I-III. Because plaintiffs can succeed on Count VIII only if they succeed on Counts I-III, and success on the latter will give them no greater relief than success on the former, the Court dismisses Count VIII as redundant of Counts I-III.

## Conclusion

For the reasons set forth above, the Court grants in part and denies in part defendants' motion to dismiss [20]. The motion is granted as to the common law and statutory fraud claims in Counts IV-VII and the declaratory judgment claim in Count VIII, which are dismissed with prejudice. The motion is denied as to the breach of contract and failure-to-settle claims in Counts I-III. Plaintiffs' motion to strike is stricken as moot [26]. This case is set for a status hearing on March 24, 2015 at 9:30 a.m.

**SO ORDERED.**                                    **ENTERED:   March 2, 2015**

_____
**HON. JORGE L. ALONSO**
**United States District Judge**